In the
 Missouri Court of Appeals
 Western District
 JAMES RANDOLPH, )
 )
 Appellant, ) WD83921
 )
 v. ) OPINION FILED: March 23, 2021
 )
 CITY OF KANSAS CITY, MO., ET )
 AL., )
 )
 Respondents. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Charles H. McKenzie, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
 Anthony Rex Gabbert, Judge

 James Randolph ("Randolph") appeals the judgment of the Circuit Court of Jackson

County, Missouri ("trial court"), granting City of Kansas City's ("City") motion for

summary judgment against Randolph's petition asking the court to quiet title in his favor

over a strip of land adjacent to and between two properties that he purchased in separate

transactions. Randolph's petition alleged several other causes of action, but all depended

upon the court's finding in his favor as to ownership of the property at issue. The trial court
granted the City's motion for summary judgment1 on the basis that Randolph could not

have obtained the property via adverse possession as he claimed because the City had

obtained the property through condemnation in the years 1906 and 1907, and a person

cannot obtain public land via adverse possession. We affirm the judgment of the trial court.

 Factual and Procedural Background2

 Randolph purchased 551 Forest in Kansas City from the Land Trust of Jackson

County, Missouri, in 1995. He purchased another property on Forest just to the South in

2013 from Missouri Department of Transportation. Between these two properties lies a

strip of land in dispute that, along with 551 Forest, was owned by Edward Woods, Louise

Woods, and John Woods ("the Woodses") in 1906.

 In 1906-07, in response to a petition from neighbors living in the area, including the

Woodses, the City began condemnation proceedings to create a public street between

Forest and Tracy called Pacific Street. The City government enacted several ordinances

for the establishment and construction of Pacific Street, neighbors affected, including the

Woodses, were served with notice of the condemnation, and notice by publication was also

ordered. A jury was empaneled, and it assessed amounts against the City for the property

taken in the condemnation. In 1909, an ordinance provided for and authorized grading

work on Pacific Street from Forest to Tracy. In 1912, an ordinance provided for the

 1
 Randolph also filed a motion for summary judgment, which the trial court denied.
 2
 We "review the record in the light most favorable to the party against whom judgment was entered,
according the non-movant the benefit of all reasonable inferences from the record." City of St. Louis v. State, 382
S.W.3d 905, 910 (Mo. banc 2012) (internal marks omitted). Facts set forth "in support of a party's motion are taken
as true unless contradicted by the non-moving party's response to the summary judgment motion." ITT Com. Fin.
Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).

 2
installation of an electric light on Pacific Street between Forest and Tracy. Photographic

and other evidence offered by the City appear to affirm the existence of Pacific Street, but

Randolph objected to the trial court's consideration of many of these documents as not

being properly authenticated. Area residents affirmed by affidavit that Pacific Street

existed and that it was used as a public street until as late as 2013.3

 Randolph alleges that Pacific Street was never properly completed, and alleges

multiple deficiencies in the 1906-07 condemnation proceedings. He also alleges that

certain records that the City was required to maintain pursuant to the City Charter in effect

at the time of the condemnation were not adequately maintained and could not be produced

by the City. Randolph concluded, therefore, that the City never actually condemned the

property intended for Pacific Street, and that he, Randolph, subsequently obtained

ownership over the Pacific Street property by adverse possession from the Woodses'

successors in interest. Thus, he filed this suit to quiet title against the City in 2016.

 Both Randolph and the City filed motions for summary judgment. The trial court

denied Randolph's motion and granted the City's motion, concluding that the City had

obtained the Pacific Street property via condemnation in 1906-07, and that it became public

land at that time. Therefore, Randolph could not have acquired ownership of the public

land through adverse possession. This appeal follows.

 Standard of Review

 Appellate review of the grant of summary judgment is essentially de novo.
 The criteria on appeal for testing the propriety of summary judgment are no

 3
 At some point, a highway was constructed that ran through or near the area, affecting Pacific Street. The
part of Pacific Street that abuts Randolph's properties is presently overgrown with grass and resembles a vacant lot.

 3
 different from those which should be employed by the trial court to determine
 the propriety of sustaining the motion initially. This Court reviews the record
 in the light most favorable to the party against whom judgment was entered.
 Summary judgment is appropriate when the moving party has [established],
 on the basis of facts as to which there is no genuine dispute, a right to
 judgment as a matter of law.

Newton v. Mercy Clinic E. Cmtys., 596 S.W.3d 625, 628 (Mo. banc 2020) (internal citations

omitted). We "may affirm if the record shows that summary judgment was appropriate

either on the basis it was granted by the trial court or on an entirely different basis, if

supported by the record." Brehm v. Bacon Twp., 426 S.W.3d 1, 4 (Mo. banc 2014).

 Analysis

 Randolph raises two points on appeal: 1) that the trial court erred in granting

summary judgment to the City on the basis that it condemned the Pacific Street property in

1906 because the City failed to comply with the procedural requirements set forth in the

1898 City Charter which was in effect at the time; and 2) that the trial court erred in granting

summary judgment to the City on the basis that it acquired the Pacific Street property

through adverse possession because there are material issues of fact as to whether Pacific

Street was ever completed as a paved street. In arguing his first point on appeal, Randolph

raises a litany of procedural requirements that he claims there is "no record" that the City

performed. There are many documents and "books" that Randolph argues the City should

have retained and provided to prove that it did, in fact, properly condemn the Pacific Street

property in the early 1900s. And in his second point on appeal, he objects to many of the

documents the City produced to establish that Pacific Street was established, completed,

and used as a public street as being not properly authenticated, not having sufficient

 4
foundation, or constituting hearsay. This is largely because, although the photographs and

maps produced by the City purport to be of the property in question, and appear to show

an established and operable Pacific Street, no one is alive now and available who can testify

as to their being authentic.

 Both of Randolph's arguments on appeal illustrate why challenges to condemnation

proceedings or claims of adverse possession when no proper condemnation has been

effected must be brought within ten years of the City's action, and this is a basis for our

affirmance of the trial court's judgment. In its motion for summary judgment, the City

raised statue of limitations as a basis for judgment as a matter of law. Actions for recovery

of lands must be brought within ten years. Section 516.010;4 City of Gainesville v.

Morrison Fertilizer, Inc., 158 S.W.3d 872, 874-75 (Mo. App. S.D. 2005). So whether there

was a condemnation that was improper, or whether the City took the property by damaging

it in some way such that the owner would have a cause of action for inverse condemnation

(which would have included damage to the title of the property), the action against the City

would need to have commenced by 1916 or 1917. Section 516.010; see also Shade v. Mo.

Highway & Transp. Comm'n, 69 S.W.3d 503, 512-13 (Mo. App. W.D. 2001). Had the City

not properly completed all of the necessary requirements for condemnation of the Pacific

Street property, or had it failed to compensate the Woodses for the taking of their land, the

documentation and evidence would more likely have been available for the Woodses and

the City to support their respective positions in a suit brought during the limitations period.

 4
 All statutory references are to R.S.Mo. 2016, as currently updated by supplement.

 5
At argument, Randolph acknowledged that there was an appeal process available at the

time of the condemnation proceedings, but he has no evidence that the Woodses, or any of

the other Pacific Street neighbors, availed themselves of that process. If we were to hold

that anyone seeking to obtain ownership of public land had only to challenge every minute

procedural particularity occurring at the time of condemnation, however long ago, and then

force the public entity to establish its compliance with every detail using documents and

photographs that could be sufficiently authenticated using present-day standards, many

public roads and highways would be in jeopardy. Alas, the statute of limitations prohibits

such stale challenges.

 Along the same lines, the City offered as a basis for summary judgment that

Randolph could not bring his action challenging the condemnation because he was not the

property owner at the time the condemnation occurred (or, as he alleges, was attempted),

and any challenge to a condemnation or claim for inverse condemnation does not run with

the land, but must be brought by the property owner at the time the "damage" whether

physical damage to property or damage to title, could be ascertained. Rose v. City of

Riverside, 827 S.W.2d 737, 738 (Mo. App. W.D. 1992). In the case of a condemnation,

where a city enacts an ordinance purporting to affect the value of the property, it is upon

passage of the ordinance that the potential damage to the property is first capable of

ascertainment, and thus when the cause of action accrues. Id. And although Randolph

argues that the condemnation was never completed because the City cannot prove (with

documents that Randolph accepts as authenticated) that the street was ever paved, paving

 6
is not a requirement for condemnation as a street. The condemning entity need not

complete its stated purpose for the property for the damage to be capable of ascertainment.

 See City of St. Louis v. Mo. Pac. Ry. Co., 114 Mo. 13, 21 S.W. 202, 206 (Mo.
 1893) (property held by the city for public use as a highway was not acquired
 by adverse possession, notwithstanding that the property had "not been
 graded, paved, or otherwise improved by the city": "[t]he time when such
 improvements shall be begun rests in the discretion of the municipal
 authorities, and the circumstance that they have not seen fit yet to exercise
 that discretion does not impair the city's standing as owner"); City of Poplar
 Bluff v. Knox, 410 S.W.2d 100, 103 (Mo. App. 1966) (the "failure of a city
 to physically open and improve a dedicated street to make its actual use
 possible" did not bar application of section 516.090); see also City of
 Gainesville v. Gilliland, 718 S.W.2d 553, 564-65 (Mo. App. S.D. 1986)
 (rejecting argument that section 516.090 did not apply because the land had
 never been subjected to a public use).

Kan. City Area Transp. Auth. v. Donovan, 601 S.W.3d 262, 273 (Mo. App. W.D. 2020).

 Although Donovan involved a property owner trying to adversely possess a property

from a government body, instead of challenging a government body's condemnation or

inverse condemnation of a property, it supports a conclusion that, even if the City had failed

to pave Pacific Street, such failure would not have been fatal to its condemnation or adverse

possession of the Pacific Street property. Because Randolph did not own any of the land

in question when the City condemned it or attempted to condemn it for use as a public

street and first obtained his interest in the adjoining land over 80 years later, he has no

standing to challenge the condemnation, and the trial court could properly have granted

summary judgment on this basis.

 Conclusion

 Because Randolph's action did not occur within ten years of the City's condemnation

or attempted condemnation of the Pacific Street property and because Randolph was not

 7
the owner of record of the property at the time of condemnation, the trial court's grant of

summary judgment was proper, and we therefore affirm the judgment of the trial court.

 Gary D. Witt, Judge

All concur

 8